**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOHNNY GONZALEZ ROMERO, *also known as* Eduardo Garcia, | ) ) ) | NO. CV 13-2633-GW (AS) |
| Petitioner, | ) ) | |
| v. | ) ) | **FINAL REPORT AND RECOMMENDATION** |
| SUPERINTENDENT DANIEL BURNS, et al., | ) ) ) | **OF A UNITED STATES MAGISTRATE** **JUDGE** |
| Respondents. | ) ) ) | |

This Final Report and Recommendation[1] is submitted to the Honorable George H. Wu, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

///

///

///

---

[1] The Final Report and Recommendation includes factual information provided in Respondent's Reply to Petitioner's objections to the initial Report and Recommendation issued on July 28, 2015.

# I.

## INTRODUCTION

On April 16, 2013, Johnny Gonzalez Romero ("Petitioner"), a Pennsylvania state prisoner subject to future custody pursuant to the judgment of a California state court, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, and an accompanying Memorandum of Law in support of the Petition ("Pet. Mem."). On August 28, 2013, Respondent Superintendent Daniel Burns filed an application to dismiss the Petition, styled as an Answer, contending that Petitioner had named the wrong Respondent, and that the Petition was mixed. On September 24, 2013, the Court issued an Order directing the Clerk of the Court to add Kamala D. Harris, Attorney General of California, as a Respondent,[2] and finding that the first three claims in the Petition were unexhausted, and therefore, the Petition was subject to dismissal as a mixed petition.

On November 12, 2013, Petitioner filed a Response to the Court's Order indicating that he had filed a habeas petition with the California Supreme Court seeking to exhaust the first three claims raised in the pending Petition. Subsequently, on May 9, 2014, this Court found, based on a review of the California Appellate Courts Case

---

[2]   See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts: "If the petitioner is not yet in custody – but may be subject to future custody – under the state-court judgment being contested, the petition must name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered."

Information system on line, that Petitioner's state habeas petition had been denied, and it therefore appeared that Grounds One through Three were exhausted.   The Court ordered Respondents to file an Answer addressing the merits of Petitioner's claims.

On September 16, 2014, Respondents filed an Answer with an accompanying Memorandum of Points and Authorities ("Ans. Mem."). On March 30, 2015, Petitioner filed a Reply. On July 28, 2015, a Report and Recommendation was issued, recommending that the Petition be denied and that this action be dismissed with prejudice. (Docket Entry No. 64). On December 21, 2015, Petitioner filed objections to the Report and Recommendation ("Objections") (Docket Entry No. 71). On January 14, 2016, Respondent filed a Reply to the Objections and a Notice of Lodging Documents (Docket Entry Nos. 73-74). On February 1, 2016, Petitioner requested, and was granted, an extension of time to file a Reply, (Docket Entry Nos. 76-77), but has failed to do so.

For the reasons discussed below, it is recommended that the Petition be DENIED and that this action be DISMISSED with prejudice.

## II.

### PRIOR PROCEEDINGS

On January 21, 2011, a Los Angeles County Superior Court jury convicted Petitioner of first degree murder in violation of California Penal Code ("P.C.") § 187(a) and attempted willful, deliberate, and premeditated murder in violation of P.C. § 664/187(a). The jury also

found true allegations that in the commission of both offenses Petitioner personally used a handgun (P.C. § 12022.53(b)), personally and intentionally discharged a handgun (P.C. § 12022.53(c)), and personally and intentionally discharged a handgun proximately causing great bodily injury and death (P.C. § 12022.53(d)). (Clerk's Transcript ("CT") 129-30; Reporter's Transcript ("RT") 1004-07). On February 17, 2011, the trial court sentenced Petitioner to a total term of ninety years to life in state prison. (CT 142-46; RT 1504).

Petitioner appealed his convictions and sentence to the California Court of Appeal, which modified aspects of Petitioner's sentence and custody credits that are not relevant to the pending Petition, but affirmed the judgment in all other respects in an unpublished opinion filed on February 7, 2012. (Lodgments 2, 9). Petitioner then filed a petition for review in the California Supreme Court, which denied the petition on April 11, 2012. (Lodgments 3-4).

On July 27, 2012, Petitioner filed a habeas petition in the California Court of Appeal, which was denied on August 16, 2012. (Lodgments 5-6). On November 12, 2013, Petitioner filed a habeas petition in the California Supreme Court, which denied the petition on January 29, 2014. (Lodgments 12-13).

///

///

///

4

### III.

#### FACTUAL BACKGROUND

The following facts, taken from the California Court of Appeal's decision on direct review, have not been rebutted with clear and convincing evidence and must be presumed correct. 28 U.S.C. § 2254(e)(1); <u>Slovik v. Yates</u>, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

Evidence was introduced that on July 3, 2004, [Tony] Arellano, a drug dealer, was in [Emilia Rosario] Clemente's apartment, sitting on her couch smoking crack with her.[FN2] Arellano was also drinking and had been awake for two days. Appellant came by and they all smoked crack together. Appellant got up and started walking toward the door. He stopped and asked Arellano for a rock. Arellano said he did not have any more. Appellant walked back and stood behind Arellano while jogging in place. Appellant took out a gun. Arellano laughed, thinking it was a toy.[FN3] Appellant shot Arellano twice, once in the ear and once in the head. Clemente was seated on the bed across from appellant and Arellano at the time. After being shot, Arellano was unconscious for several minutes. When he awoke, he did not see Clemente.[FN4] He tried to call 911, but could not get through. He left the apartment to get help.

5

FN2 At the time of trial, Arellano was in custody for an unrelated crime. When Arellano was called to the stand, he initially stated he could not swear to tell the truth. After being sworn, he was asked about the shooting that led to his injury and Clemente's death. He denied remembering anything, including his statements to the prosecutor and investigators and his testimony at the preliminary hearing. Earlier, Arellano had told the prosecutor and Julian Pere, a police investigator, that he would not testify because he was afraid for his safety and the safety of his family if he was labeled a snitch while in custody. Arellano's version of events was introduced by means of the testimony of Pere, who had interviewed or spoken with Arellano three times, and through Arellano's preliminary hearing testimony.

FN3 Contrary to his statement to investigator Pere, at the preliminary hearing, Arellano testified he did not see the gun.

FN4 Police found Clemente's body hunched over in a sitting position next to the bed.

After the shooting, fingerprint specialists found fingerprints on a beer bottle inside Clemente's apartment and identified them as appellant's. Investigators put together a photographic six-pack, which included appellant's picture. Arellano identified appellant after reviewing the six-pack. Appellant left the state and was located in Pennsylvania approximately one month after the shooting. In 2010, he was extradited to California.

Elpidio Quiles had known Clemente since 1985. He had seen appellant in Clemente's apartment shortly before she was killed.FN5 Quiles identified appellant from a photographic lineup as the man he had seen with Clemente.

6

The autopsy revealed that Clemente had been shot twice, once in the upper chest and once in the lower abdomen. The absence of soot or stippling on the body indicated that the barrel of the gun had been more than two feet away when the weapon was fired. Investigators did not notice any bullet holes in or recover any bullets from the apartment. No gun was recovered.

FN5   Quiles testified he had seen appellant with Clemente a week before the shooting, but he told investigators it had been the day before.

(Lodgment 2 at 3-4).

**IV.**

**PETITIONER'S CLAIMS**

Petitioner raises the following claims for federal habeas relief:

Ground One:      Petitioner's trial counsel rendered ineffective assistance by failing to move for dismissal on the ground that the prosecution violated the Interstate Agreement on Detainers.

Ground Two:      Petitioner's trial counsel rendered ineffective assistance by failing to request an independent fingerprint analysis.

7

Ground Three:    Petitioner's trial counsel rendered ineffective
assistance by conceding that Petitioner was at the
crime scene.

Ground Four:    The trial court "improperly injected community
pressure into Petitioner's trial by admonishing
the jury that the witnesses and victims were
entitled to 'see that there is ultimately a fair
trial that occurs and that the jury reaches a just
result.'"

Ground Five:    The evidence was insufficient to support
Petitioner's convictions because there was no
evidence of premeditation and deliberation.

(Petition at 13-19; Pet. Mem. at 24-72; Reply at 19-41).

**V.**

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law or was based upon an

8

unreasonable determination of the facts. 28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]'" Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Petitioner raised Grounds Four and Five in his petition for review to the California Supreme Court, which denied those claims without comment or citation to authority. (Lodgments 3-4). The Court "looks through" the California Supreme Court's silent denial to the last reasoned decision as the basis for the state court's judgment. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); Cannedy v. Adams, 706 F.3d 1148, 1159 (9th Cir. 2013) ("[W]e conclude that Richter does not change our practice of 'looking through' summary denials to the last reasoned decision – whether those denials are on the merits or denials of discretionary review." (footnote omitted)), as amended, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S. Ct. 1001 (2014). Therefore, in addressing Grounds Four and Five, the Court will consider the California Court of Appeal's reasoned opinion. Berghuis v. Thompkins, 560 U.S. 370, 380 (2010).

Petitioner raised Grounds One through Three in habeas petitions in the state courts, which were summarily denied. (Lodgments 5-6, 12-13). In light of the fact that the California Supreme Court denied the

petition with citations to People v. Duvall, 9 Cal. 4th 464, 474 (1995); and In re Swain, 34 Cal. 2d 300, 304 (1949), Respondents argue that Petitioner has failed to exhaust Grounds One through Three. (Ans. Mem. at 4-8; Lodgment 13); see also Howard v. Campbell, 305 Fed. App'x. 442, 445 (9th Cir. 2008) (cited pursuant to 9th Cir. R. 36-3) ("In California, a Swain/Duvall dismissal affords the petitioner the opportunity to refile an amended pleading that alleges with sufficient particularity the facts warranting habeas relief. [The petitioner's] failure to do this renders his claim unexhausted.") (citations, brackets, and internal quotation marks omitted). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). It is appropriate to do so in those cases in which the interests of comity and federalism will be better served. Granberry v. Greer, 481 U.S. 129, 134-35 (1987). The Court finds this is such a case because Grounds One through Three "[do] not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005).

However, in an abundance of caution, this Court assumes the California Supreme Court's citations to Duvall and Swain indicate that the court did not deny Grounds One through Three on the merits. See Gaston v. Palmer, 417 F.3d 1030, 1039 (9th Cir. 2005) ("The ruling in Swain was ... not a final ruling on the merits of Swain's state habeas application, but rather was, in effect, a grant of a demurrer with leave to refile.... In light of its citations to Swain and Duvall, we read the California Supreme Court's denial of [the petitioner's state

10

habeas petition] as, in effect, the grant of a demurrer, i.e., a holding that Gaston had not pled facts with sufficient particularity."). As a result, this Court reviews those claims *de novo*. See Cone v. Bell, 556 U.S. 449, 472 (2009) (where the state courts do not reach the merits of the federal claim at issue, "federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed *de novo*.").

**VI.**

**DISCUSSION**

**A.  Ineffective Assistance Claims**

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam); see also Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012) ("The right to counsel is the right to effective assistance of counsel."). To succeed on an ineffective assistance of trial counsel claim, Petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "'To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Richter, 562 U.S. at 104 (citation omitted); Premo v. Moore, 562 U.S. 115, 121 (2011). Prejudice "focuses on the question

11

whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Williams v. Taylor, 529 U.S. 362, 393 n.17 (2000).    That is, Petitioner must establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" Strickland, 466 U.S. at 694; Pinholster, 131 S. Ct. at 1403, and "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112; Pinholster, 131 S. Ct. at 1403.    Petitioner bears the burden of establishing both components.    Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687.    However, the Court need not determine whether counsel's performance was deficient before examining the prejudice the alleged deficiencies caused Petitioner.    See Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000) ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (quoting Strickland, 466 U.S. at 697)).

**1.    Alleged Failure to Move for Dismissal Pursuant to the Interstate Agreement on Detainers ("IAD")**

Petitioner was temporarily extradited from Pennsylvania, where he was serving an indeterminate life sentence, to be tried on the charges in this case.    (See RT 1505); see also In re Garcia, 984 A.2d 506 (Pa. Super. Ct. 2009) (denying Petitioner's habeas challenge to extradition to California and noting that his minimum sentence in Pennsylvania "would not expire until November 2029 and ... his maximum sentence

would not expire until November 2054."). P.C. § 1389, at Article IV, section (c) provides, in pertinent part, that "trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

In Ground One, Petitioner claims that he was not brought to trial within 120 days of his arrival in California, as required by the governing statute (the IAD, codified in California at P.C. § 1389) and his trial counsel was ineffective for failing to move for dismissal on that ground. (Petition at 13-14; Pet. Mem. at 24-27, 37-39; Reply at 19-28). As Respondents point out, however, Petitioner has not alleged or shown that any time exceeding 120 days between his extradition and the commencement of his trial was not based on a "necessary or reasonable continuance," and has waived his rights under that provision of the IAD.

Petitioner was extradited from Pennsylvania and arrived in California on February 18, 2010. (Pet. Mem. at 27; RT 757). Petitioner was arraigned the following day, on February 19, 2010, and a preliminary hearing was set for March 3, 2010. (See Lodged Document No. 16; Docket Entry No. 74-1 at 1-2)[3] On March 1, 2010, Petitioner's

_____

[3]   In his objections to the Report and Recommendation issued on July 28, 2015, Petitioner contended that he had not waived the IAD's 120-day period to proceed to trial because the trial date continuances to which he agreed occurred after the 120-day period following his arrival in California. (Docket Entry No. 71). In its Reply to the

counsel filed a motion to continue the preliminary hearing. (Docket Entry No. 74-1 at 3). On March 3, 2010, Petitioner appeared in Court, waived time, and the preliminary hearing was continued to April 1, 2010. Id. On April 1, 2010, Petitioner appeared in Court and, due to the unavailability of Petitioner's counsel, the preliminary hearing was continued to April 2, 2010. Id. at 3-4. On April 2, 2010, Petitioner appeared in court, waived time and preliminary hearing was continued to April 26, 2010. Id. On April 26, 2010, Petitioner appeared in court, waived time and preliminary hearing was continued to May 20, 2010. Id. at 4-5.

The preliminary hearing was held on May 20, 2010. (CT 1). Thereafter, the record reflects Petitioner voluntarily waived his statutory speedy trial rights seven times prior to the commencement of trial. (CT 94, 96, 97, 99, 100, 102, 103). On at least three of those occasions, the defense requested the continuances (CT 94, 96, 97), and for two of the occasions, the subsequent hearing date was set by stipulation of both parties. (CT 100, 102). In light of these actions, any objection based upon the IAD's 120-day period was waived. See Brown v. Wolff, 706 F.2d 902, 907 (9th Cir. 1983) (holding that "[a] prisoner may waive his IAD rights, . . . if he affirmatively requests to be treated in a manner contrary to the procedures

Objection, Respondent pointed out that, in addition to requesting or stipulating to trial date continuances, Petitioner had also waived statutory time in connection with requests to continue his preliminary hearing dates *within* the 120-day period following his arrival in California and lodged the state court docket entries reflecting these waivers. (Docket Entry Nos. 73-74; Reply to Objection; Notice of Lodging No. 16).

prescribed by the IAD," and finding that the petitioner, by expressly agreeing to continuances up to the date of his trial, "acted contrary to the speedy trial provisions of the IAD."); see also Drescher v. Superior Court, 218 Cal. App. 3d 1140, 1148 (Cal. Ct. App. 1990) (where the defendant "freely acquiesc[ed] in the numerous continuances of the preliminary hearing, as well as the setting of a trial date well beyond the speedy trial period of Article IV(c), [he] waived his statutory right to a trial within 120 days of his return to this state" and "[t]he trial court did not err in denying his motion to dismiss pursuant to ... Penal Code section 1389.").

Moreover, because a motion to dismiss based upon a violation of the IAD would have been unsuccessful, Petitioner cannot show that his counsel was ineffective for failing to file one. See Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of an attorney to raise a meritless claim is not prejudicial" under Strickland); see also Gonzalez v. Knowles, 515 F.3d 1006, 1017 (9th Cir. 2008) (trial counsel is not ineffective for failing to raise a meritless objection); Shah v. United States, 878 F.2d 1156 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") (citation omitted).

Accordingly, Based on the Court's *de novo* review, Petitioner is not entitled to relief in Ground One.

///

///

///

1            **2.    Alleged Failure to Request An Independent Fingerprint Analysis**

2

3        In Ground Two, Petitioner complains that his trial attorney failed

4   to request an independent analysis of the fingerprints found at the

5   crime scene, ostensibly to rebut the prosecution's evidence that two of

6   the nineteen prints lifted from the scene matched Petitioner's prints.

7   (Petition at 14-15; Pet. Mem. at 45-48, 51-55; Reply at 28-36).

8

9        The burden to show that counsel's performance was deficient "rests

10  squarely on the defendant," and "[i]t should go without saying that the

11  absence of evidence cannot overcome" the "strong presumption" that

12  counsel's conduct fell within the wide range of reasonable professional

13  assistance.   Burt v. Titlow, --- U.S. ---, ---, 134 S. Ct. 10, 17

14  (2013).

15

16       Here, Petitioner has not proffered any evidence, save for his bald

17  assertion that he was not present at the crime scene, to show why his

18  defense counsel had any reason to expend the time and resources

19  required to have independent fingerprint testing done.  The prosecution

20  methodically presented its fingerprint evidence for the jury.  Denise

21  Williams, the forensic print specialist who collected the fingerprints

22  from the crime scene, testified that she had over twenty years of

23  experience in lifting latent fingerprints, her process for lifting

24  fingerprints, and her ability to lift a total of nineteen fingerprints

25  from the crime scene in this case.  (RT 710-22).  Diego Tabares, the

26  forensic specialist who analyzed the fingerprints, testified that he

27  had twenty years of experience in different facets of fingerprint

28                                    16

identification, including sixteen years as a forensic print specialist. (RT 725-26).   Tabares explained that after examining all nineteen fingerprints lifted from the crime scene, he determined that four had the proper ridge structure and detail to be entered into an automated fingerprint identification system.   (RT 728-30).   After entering those four fingerprints into the system, as to two of the prints, "the computer kicked out a possible result of Johnny Romero with a possible identification number." (RT 730-31, 739).   Tabares then independently compared the computer's fingerprint results with a magnifying glass and confirmed that the information was correct.     (RT   731-32). Subsequently,   prior   to   Petitioner's   preliminary   hearing,   Tabares personally took Petitioner's fingerprints on a rolled impression card, compared those prints to the fingerprints that had been taken from the crime scene and run through the database, and confirmed the prints were Petitioner's.   (RT 733-34).   On the day of his trial testimony, Tabares took a new thumb print from Petitioner, and confirmed that the prints still matched.   (RT 734-35).   Tabares testified that in his expert opinion, based upon his training and experience, "the ridge structure, the ridge detail present and the known latent impression and the rolled impression of Mr. Romero," the fingerprints recovered from a beer bottle at the crime scene were Petitioner's.   (RT 737).

Defense   counsel   conducted   a   skilled   cross-examination   of   both Williams and Tabares, (RT 723-24, 737-39), and Petitioner proffers nothing to show there was any further, legitimate rebuttal to their testimony or conclusions.

17

Based upon the foregoing, Ground Two is patently without merit because an attorney's "failure to take a futile action can never be deficient performance," Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996); see also Strickland, 466 U.S. at 694 (the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."), and Petitioner has not proffered anything to show that his counsel was deficient for failing to request independent fingerprint testing. Titlow, 134 S. Ct. at 17.

**3.   Counsel's Concession That Petitioner Was At The Crime Scene**

In Ground Three, Petitioner complains that his trial counsel was deficient for conceding during his closing argument that Petitioner was present at the crime scene at some point before the crime occurred. (Petition at 15; Pet. Mem. at 55-56, 60-63, 66; Reply at 36-38). Petitioner's claim refers to the following portions of defense counsel's closing argument:

Is there a reasonable explanation for that print being there that might say he is not guilty? Yes.  Obviously -- even Mr. Quiles said not only was he there -- maybe he was there the day before, maybe there the week before.  I think he even said a couple times in June.  It appears that my client was somewhat friendly with the deceased which would somewhat cut against an argument that he had a motive to kill the deceased.... [¶] ...

18

1    [The beer bottle] was touched.  My client was there on several

2    occasions before.  It could have been touched at any time.

3

4  (RT 975-76; see also Pet. Mem. at 56; Reply at 36).

5

6    Ground Three is also clearly without merit.  Significantly, because

7  "[i]t is all too tempting for a defendant to second-guess counsel's

8  assistance after conviction or adverse sentence, and it is all too easy

9  for a court, examining counsel's defense after it has proved

10  unsuccessful, to conclude that a particular act or omission of counsel

11  was unreasonable," judicial scrutiny of an attorney's performance "must

12  be highly deferential," and a reviewing court "must indulge a strong

13  presumption that counsel's conduct falls within the wide range of

14  reasonable professional assistance; that is, the defendant must

15  overcome the presumption that, under the circumstances, the challenged

16  action might be considered sound trial strategy." Strickland, 466 U.S.

17  at 689 (internal quotation marks and citation omitted).

18

19    Here, Petitioner admits that his attorney made the above comments

20  "in an apparent attempt to minimize the damaging import of the

21  fingerprint evidence" (Pet. Mem. at 56), and that strategy was

22  reasonable in light of the evidence.  In fact, in addition to the very

23  solid fingerprint evidence establishing Petitioner's presence at the

24  crime scene, Elpidio Quiles, Clemente's boyfriend, testified that he

25  had seen Petitioner at her apartment at some point before the day of

26  the shooting.  (RT at 702-03, 705-06, 708-09).  Petitioner has failed

27  to overcome the strong presumption that, under these circumstances, it

28  was sound trial strategy for counsel to admit the obvious and focus on

*when* Petitioner had been inside Clemente's apartment instead of risking alienating the jury by trying to convince them that Petitioner was never there at all.  <u>Strickland</u>, 466 U.S. at 698.

The Court's *de novo* review of Petitioner's ineffective assistance of counsel claims in Grounds One through Three establishes that he is not entitled to federal habeas relief for any of those claims.

**B.  <u>Alleged Instructional Error</u>**

In Ground Four, Petitioner claims the trial court "improperly injected community pressure" into his trial "by admonishing the jury that the witnesses and victims were entitled to 'see that there is ultimately a fair trial that occurs and that the jury reaches a just result.'"  (Petition at 15-16; Pet. Mem. at 66-67).

**1.  Background Facts**

Petitioner's claim in Ground Four concerns the following admonishment made by the trial court to prospective jurors at the start of voir dire:

> I would like to talk a little bit about jury service and just how important all of you are to the criminal justice system.  [¶] ... [¶] ... [S]ome of you might ... be thinking, "This is an opportunity for me to contribute to the effective criminal justice system, to participate in seeing that justice is done in a given case."  And that's what we are all here to

do, to see that justice is done in this particular case, to
select twelve citizens who don't have an interest in how this
case comes out, but have an interest only [in] seeing that
justice is done by seeing that the jurors participate in a fair
trial for the defendant here and a fair trial for the
prosecution, and that the parties that were affected in this
case, the defendant who has been waiting for trial for [some
time], the victim, one of whom we expect will testify and one
of whom will not be testifying in this case, and the witnesses
who are involved in this matter; that they, too, can see that
there is ultimately a fair trial that occurs and that the jury
reaches a just result. [¶] And that's why we have called all
of you here.

(RT 8-9).

## 2.    The California Court of Appeal's Opinion

In denying this claim on direct appeal, the California Court of
Appeal ruled as follows:

Appellant contends that by telling the prospective jurors
to consider the victims and the witnesses and their desire for
a "fair trial," the court was essentially asking them take
public opinion and community expectations into account or to
heed the presumed desire of the witnesses, all of whom were
called by the prosecution, to find appellant guilty.

The court's comments are not reasonably susceptible to

21

such an interpretation.  The court did no more than inform the prospective jurors of the importance of a fair trial and just verdict.  It emphasized that their sole responsibility to all the participants, including appellant, was to be fair and "see that justice is done."  The court's words did not suggest that the victims or the witnesses were more important than appellant, or that reaching a just result required a particular verdict.

(Lodgment 2 at 9).

### 3.   Analysis

Instructional error warrants federal habeas relief only if the "'instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Waddington v. Sarausad, 555 U.S. 179, 191 (2009) (citation and internal quotation marks omitted); Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam).  Moreover, if a constitutional error occurred, federal habeas relief remains unwarranted unless the error caused prejudice, i.e., unless it had a substantial and injurious effect or influence in determining the jury's verdict.  Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008) (per curiam) (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

Here, Petitioner's interpretation of the trial court's admonishment, that it improperly injected community pressure into his trial, is not a reasonable one.  This Court concurs with the California Court of Appeal's conclusion that "[t]he court did no more than inform

the prospective jurors of the importance of a fair trial and just verdict." (Lodgment 2 at 9). Additionally, prior to deliberations, the twelve jurors who were ultimately selected were admonished twice that they "must use only the evidence that was presented in this courtroom" in reaching a decision, and were also instructed that they could not "let bias, sympathy, prejudice, or public opinion" influence their decision, and that "[b]ias includes, but is not limited to, bias for or against the witnesses, attorneys, defendant or alleged victims, ...." (CT 115-16). Jurors are presumed to follow the court's instructions, see Weeks v. Angelone, 528 U.S. 225, 234 (2000), and Petitioner has proffered nothing to rebut that presumption in this case. Most significant, Petitioner has failed to establish that the preliminary instruction at issue for prospective jurors so infected the entire trial that the resulting conviction violated due process. Sarausad, 555 U.S. at 191.

Moreover, in light of the strength of the evidence establishing Petitioner's guilt, as discussed below, and the attempted murder victim's positive identification of Petitioner as the shooter from a six-pack photographic lineup (RT 683-88), the alleged instructional error did not have a substantial and injurious effect or influence in determining the jury's verdict. Brecht, 507 U.S. at 623.

Accordingly, the California Supreme Court's rejection of Ground Four was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

///

///

23

**C.   Sufficiency of the Evidence**

In Ground Five, Petitioner claims the evidence was insufficient to support his convictions.  Specifically, he argues there was no evidence of premeditation and deliberation in this case.  (Petition at 16-19; Pet. Mem. at 69-73).

**1.   Legal Standard**

To review the sufficiency of the evidence in a habeas corpus proceeding, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (per curiam); see also Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per curiam) ("[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless [of] whether that evidence was admitted erroneously," McDaniel v. Brown, 558 U.S. 120, 131 (2010) (per curiam) (citation omitted), all evidence must be considered in the light most favorable to the prosecution, Lewis v. Jeffers, 497 U.S. 764, 782 (1990); Jackson, 443 U.S. at 319, and if the facts support conflicting inferences, reviewing courts "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326; Cavazos v.

24

_Smith_, 132 S. Ct. 2, 6 (2011) (_per curiam_).  Furthermore, under AEDPA, federal courts must "apply the standards of [_Jackson_] with an additional layer of deference."  _Juan H. v. Allen_, 408 F.3d 1262, 1274 (9th Cir. 2005); _Boyer v. Belleque_, 659 F.3d 957, 964-65 (9th Cir. 2011).  These standards are applied to the substantive elements of the criminal offense under state law.  _Jackson_, 443 U.S. at 324 n.16; _Boyer_, 659 F.3d at 964; _see also_ _Johnson_, 132 S. Ct. at 2064 ("Under _Jackson_, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and quotation marks omitted)).

**2.   The California Court of Appeal's Opinion**

The California Court of Appeal rejected Petitioner's claim, concluding:

> The evidence supports the inference that [petitioner] had a motive for killing Arellano — his refusal to supply him with more crack.[FN6]   There was also evidence of planning. [Petitioner], having earlier concealed a loaded weapon on his person, maneuvered himself behind and close to Arellano. Before drawing the gun, he jogged in place for a period of time, giving him sufficient opportunity for deliberation and reflection.   The manner of killing also supported the jury's verdict. [Petitioner] shot Arellano twice, in the ear and the head, at close range.   The fact that neither bullet proved fatal did not require the jury to conclude that [petitioner]

did not intend to kill Arellano or that he did so without deliberation and premeditation.

> FN6 [Petitioner] contends he had no reason to be angry because Arellano said he did not have any more crack — not that he had some but refused to provide it. As Arellano was an admitted drug dealer, the jury could reasonably have concluded [petitioner] did not believe him, or that even if he did, he was angry that Arellano could not supply him with additional crack.

There was also evidence that [petitioner] had a motive for killing Clemente.  She had just witnessed him shoot Arellano and could easily have identified him to authorities due to their prior acquaintance.  Although there was no evidence demonstrating the precise interval between the shooting of Arellano and the shooting of Clemente, the fact that she was shot twice in two different areas of her body — both areas where the bullet was likely to strike vital organs and cause death — supported that [petitioner] had time to reflect.  The jury could reasonably have inferred that having shot Arellano in cold blood, [petitioner] transferred his attention to Clemente and made a calculated decision to kill her to prevent her from being a witness against him, firing directly into her chest and abdomen.[FN7]

> FN7 [Petitioner] contends that one of the shots may have been accidental, as Clemente was sitting in line with the shots fired at Arellano and could have been hit by the bullet that grazed Arellano's ear. The jury was not required to draw such an inference but assuming, arguendo, the first shot to hit Clemente was accidental, the fact that [petitioner] fired a second shot into her body supports the jury's verdict that the killing was deliberate and

premeditated.

(Lodgment 2 at 7-8).

### 3.   Analysis

In California, murder is the unlawful killing of a human being with "malice aforethought."   P.C. § 187(a).   The elements of attempted murder are the specific intent to murder a human being and a direct but ineffectual act in furtherance of such intent.   People v. Lee, 31 Cal. 4th 613, 623 (2003); People v. Johnson, 81 Cal. App. 3d 380, 388 (Cal. Ct. App. 1978).   A murder is of the first degree if it is willful, deliberate, and premeditated.   P.C. § 189.   Additionally, the terms "premeditated" and "deliberate" have the same meaning in the attempted murder context that they carry in connection with first degree murder. People v. Herrera, 70 Cal. App. 4th 1456, 1462 n.8 (Cal. Ct. App. 1999), disapproved on another ground by People v. Mesa, 54 Cal. 4th 191, 198-99 (2012).   That is, a "premeditated" act is one that was considered beforehand, and "deliberate" means that the act was performed as a result of careful thought and weighing of considerations for and against the proposed course of action.   People v. Mayfield, 14 Cal. 4th 668, 767 (1997).   However, "[t]he process of premeditation and deliberation does not require any extended period of time."   Id.   "The true test is not the duration of time as much as it is the extent of the reflection.   Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly...."   Id. (quoting People v. Thomas, 25 Cal. 2d 880, 900 (1945)).

California courts typically rely on three categories of evidence in determining whether there was sufficient evidence of premeditation and deliberation: motive, planning activity, and manner of the attack. People v. Stitely, 35 Cal. 4th 514, 543 (2005). However, those factors are considered to be merely an "aid" and "need not be present in some special combination or afforded special weight, nor are they exhaustive." People v. Booker, 51 Cal. 4th 141, 173 (2011). Additionally, circumstantial evidence alone can be sufficient to demonstrate a defendant's guilt, United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004), and jurors may even draw an "inference upon an inference." United States v. Arteaga, 117 F.3d 388, 399 (9th Cir. 1997).

Viewing the evidence in the light most favorable to the prosecution, as this Court must do, the Court's independent review of the record establishes sufficient evidence of premeditation and deliberation in this case. Jackson, 443 U.S. at 319; see also Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997) (in considering a habeas petition, the district court is required to make its determination as to the sufficiency of the state court findings from an independent review of the record). As the California Court of Appeal found, the evidence established that on July 3, 2004, Petitioner was with both victims, Tony Arellano and Emilia Clemente, in Clemente's apartment drinking alcohol and smoking crack cocaine. (RT 629, 676-77, 680-81). Arellano had provided the drugs. (RT 682-83). Arellano was sitting on a couch, Petitioner was on another couch, and Clemente was sitting on a bed. (RT 674-75). Petitioner asked Arellano for a rock of cocaine, and Arellano said he did not have any more. (RT 690-91). Petitioner

28

then stood up, walked behind Arellano, and began jogging in place. (RT 674, 681). Next, Petitioner displayed a handgun and pointed it at Arellano, and Arellano laughed because he thought it was a toy. (RT 681). Petitioner then shot Arellano once in the ear and once in the head. (RT 674, 681-82). After regaining consciousness, Arellano left the apartment and was subsequently found on the sidewalk. (RT 675, 682, 750). When officers arrived at the apartment, they saw Clemente's body "on the floor in a sitting position, hunched down, next to a bed." (RT 664). Clemente had been shot once in the chest and once in the abdomen, and died of multiple gunshot wounds. (RT 742-43).

The Court finds this evidence sufficient for a rational trier of fact to have found Petitioner guilty of first degree murder and willful, deliberate, and premeditated attempted murder beyond a reasonable doubt. Jackson, 443 U.S. at 319. As the trial court found, based upon the evidence, premeditation was "an issue for the jury" because there was testimony establishing that Petitioner:

> specifically moved into the position behind the [attempted murder] victim, which would seem to suggest that facilitated the shooting because the victim basically was not in the position to even foresee what the defendant was doing. And thereafter, the shots took place after, if the jury believes the testimony, ... there was a request for drugs which were denied.

(RT 774-75). In addition to the evidence of motive and planning activity cited by the trial court, the manner of the shootings --

29

hitting the victims in the head, ear, chest and abdomen -- presented additional evidence to support premeditation.  _Stitely_, 35 Cal. 4th at 543.

Additionally, based upon the foregoing analysis, under AEDPA's "additional layer of deference," this Court also cannot say the jury's finding was so insupportable as to fall below the threshold of bare rationality.  _Juan H._, 408 F.3d at 1274; _Johnson_, 132 S. Ct. at 2065.

Accordingly, the California Supreme Court's rejection of Ground Five was neither contrary to, nor an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

**D.   Petitioner's Requests for an Evidentiary Hearing and to Supplement His Petition**

Petitioner's various requests throughout his Petition, attached memorandum, and Reply for an evidentiary hearing are denied because he has failed to satisfy the requirements for holding an evidentiary hearing under § 2254(e)(2)(A)-(B).  _See_ _Pinholster_, 131 S. Ct. at 1398-99 (review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits, and therefore, when the state court record precludes habeas relief, a district court is not required to hold an evidentiary hearing).  Further, Petitioner's requests in his memorandum to supplement his argument in Grounds Four and Five are denied, as Petitioner has received more than ample time to access any legal authority he seeks.

**VII.**

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting this Final Report and Recommendation, (2) denying the Petition for Writ of Habeas Corpus, and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: March 1, 2016.

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE